# UNITED STATES DISTRICT COURT

### for the
### Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   MJ21-613 |
| Subject Devices more fully described in Attachment A, attached hereto | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
SEE ATTACHMENT A, ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

located in the _____ Western _____ District of _____ Washington _____, there is now concealed *(identify the person or describe the property to be seized):*

SEE ATTACHMENT B, ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. Sections 922(g), 924(c) | Felon in possession of firearm and ammunition, in furtherance of drug trafficking crimes |
| Title 18, U.S.C. Section 841(a)(1) | Distribution of, and possession with intent to distribute controlled substances |
| Title 18, U.S.C. Sections 1591(a)(1), (b)(1) | Sex trafficking through force, fraud, and coercion |
| Title 18, U.S.C. Section 2421 | Transportation for the purpose of prostitution |

The application is based on these facts:

✓ See Affidavit of ATF Nathan Petrulak.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

---

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

**Nathan Petrulak, Special Agent**
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: November 18, 2021

*Judge's signature*

City and state:  Seattle, Washington

Michelle L. Peterson, U.S. Magistrate Judge
*Printed name and title*

1 STATE OF WASHINGTON      )
                             )    ss

2 COUNTY OF KING            )

3

4        I, Special Agent Nathan Petrulak, being first duly sworn on oath, depose and state

5 as follows:

6 ### INTRODUCTION AND AGENT BACKGROUND

7        47.    I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms,

8 and Explosives (ATF) and have been so employed since March 6, 2018. I am an

9 "investigative or law enforcement officer of the United States" within the meaning of

10 Title 18, United States Code, Section 2510(7), that is, an officer of the United States who

11 is empowered by law to conduct investigations of, and to make arrests for, offenses

12 enumerated in Title 18, United States Code, Section 2516. I am currently assigned to the

13 Seattle Field Division in Seattle, Washington, where I am assigned to the Seattle I Field

14 Office.

15        48.    I received formal training in the Federal Law Enforcement Training Center

16 in Glynco, Georgia, Criminal Investigators Training Program, which familiarized me

17 with basic narcotic investigations, drug identification and detection, familiarization with

18 United States narcotics laws, financial investigations and money laundering,

19 identification and seizure of drug-related assets, organized crime investigations, physical

20 and electronic surveillance, and undercover operations.  In addition, I successfully

21 completed a fifteen-week ATF Special Agent Basic Training course in Glynco, Georgia,

22 which included comprehensive, formalized instruction in, among other things: firearms

23 identification, firearms trafficking, arson and explosives, and tobacco and alcohol

24 diversion. I am graduate of Point Park University where I received a Master's in Business

25 Administration in 2014. Additionally, I am a graduate of the University of Pittsburgh

26 where I received a Bachelor of Science in Biological Sciences in 2010. As a result of my

27 training, experience, and that of other more experienced investigators, I have an

28 understanding of the manner in which narcotics are distributed and various roles played

AFFIDAVIT OF SA NATHAN PETRULAK - 1
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   by individuals or groups involved in the distribution, along with unlawful use of firearms

2   during crimes of violence and/or drug trafficking and firearms trafficking.

3   As noted above, I am responsible for investigations involving specified unlawful

4   activities, to include violent crimes involving firearms that occur in the Western District

5   of Washington.  I am also responsible for enforcing federal firearms and explosives laws

6   and related statutes in the Western District of Washington.  I received training on the

7   proper investigative techniques for these violations, including the identification of

8   firearms and the location of the firearms' manufacture.  I have actively participated in

9   investigations of criminal activity, including but not limited to crimes against persons,

10  crimes against property, narcotics-related crimes, and crimes involving the possession

11  and use, theft, or transfer of firearms.  During these investigations, I have also

12  participated in the execution of search warrants and the seizure of evidence indicating the

13  commission of criminal violations.  During the course of my law enforcement career, I

14  have also consulted with law enforcement officers who investigate crimes related to

15  prostitution and sex trafficking.

16      **IDENTIFICATION OF THE SUBJECT DEVICES TO BE EXAMINED**

17          49.     This Affidavit is submitted in support of an Application to search the

18  following digital devices (hereinafter "the SUBJECT DEVICES"), as further described in

19  Attachment A, for evidence, fruits and instrumentalities, as further described in

20  Attachment B, of the crimes of being a felon in possession of a firearm and ammunition,

21  in violation of Title 18, United States Code, Section 922(g); possessing firearms in

22  furtherance of drug trafficking crimes, in violation of Title 18, United States Code,

23  Section 924(c); distribution of, and possession with intent to distribute, controlled

24  substances, in violation of Title 21, United States Code, Section 841(a)(1); sex trafficking

25  through force, fraud, and coercion, in violation of Title 18, United States Code, Section

26  1591(a)(1) and (b)(1); and transportation for the purpose of prostitution, in violation of

27  Title 18, United States Code, Section 2421.

28

AFFIDAVIT OF SA NATHAN PETRULAK - 2
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a.    One black cell phone, unknown make (KCSO Item #C21022558-4) (recovered from HAYES'S person on July 20, 2021) **(SUBJECT DEVICE 1)**, currently located in the custody of the King County Sheriff's Office (KCSO) 4623 7th Avenue South, Seattle;

b.    One blue OnePlus cell phone (KCSO Item #C21022558-5) (recovered from HAYES's person on July 20, 2021) **(SUBJECT DEVICE 2)**, currently located in the custody of the King County Sheriff's Office (KCSO), 4623 7th Avenue South, Seattle; and

c.    One silver iPhone (ATF Item #4) (recovered from HAYES's person on October 7, 2021) **(SUBJECT DEVICE 3)**, currently located in the custody of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), 1521 1st Avenue South, Seattle.

50.    Based upon the information described herein, I believe that the SUBJECT DEVICES were used by HAYES to facilitate his facilitate his drug trafficking activity and communicate with other drug traffickers and/or drug customers, in violation of Title 21, United States Code, Section 841(a)(1), and to facilitate his prostitution/sex trafficking activity and communicate with victims and/or prostitution customers, in violation of Title 18, United States Code, Section 1591(a)(1) and (b)(1), and that evidence of those violations will be found in his phone.

51.    This Affidavit is being presented electronically pursuant to Local Criminal Rule CrR 41(d)(3).

## SOURCES OF INFORMATION

52.    I have obtained the facts set forth in this Affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other investigations by the DEA. Insofar as I have included event times in this affidavit, those event times are approximate.

AFFIDAVIT OF SA NATHAN PETRULAK - 3
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

53.     Since this affidavit is being submitted for the limited purpose of obtaining authority to search the SUBJECT DEVICES, I have not included every fact known concerning this investigation. I have set forth only the facts that I believe are essential for a fair determination of probable cause.

## SUMMARY OF PROBABLE CAUSE

**A.     HAYES's Criminal History**

54.     I have reviewed court and law enforcement records related to EVERETT JAMESLEE HAYES's criminal history.  These records show that HAYES has an active protection order that prohibits him from possessing firearms, in addition to nine felony convictions that include felony violation of a protection order, robbery in the second degree, unlawful possession of a firearm in the second degree, harassment, theft in the first degree, theft in the second degree, and residential burglary.

55.     Specifically, HAYES has been convicted of the following crimes for which he was sentenced to a term of imprisonment exceeding one year:

*Domestic Violence Felony Violation of a Court Order*, under cause number 18-1-03277-2, dated on or about June 7, 2019, in King County Superior Court, Washington, under the alias EVERETT JAMES KENNEBREW;

*Unlawful Possession of a Firearm in the Second Degree* and *Assault in the Third Degree – Domestic Violence*, under cause number 15-1-01092-8, dated on or about July 17, 2015, in King County Superior Court, Washington, under the alias EVERETT JAMES KENNEBREW; and

*Robbery in the Second Degree* and *Felony Harassment*, under cause number 11-1-10661-2, dated on or about January 20, 2012, in King County Superior Court, Washington, under the alias EVERETT JAMES KENNEBREW.

**B.     HAYES's July 20, 2021 Arrest**

56.     On July 20, 2021, King County Sheriff's Office (KCSO) Sergeant Hamill, supervisor of the SeaTac Street Crimes Unit, conducted a community area check of the Motel 6 parking lot located at 20651 Military Road South, SeaTac, Washington, and encountered a male bleeding from his face. Sergeant Hamill saw a white SUV quickly

AFFIDAVIT OF SA NATHAN PETRULAK - 4
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  pull out of the parking stall driving over the curb and heading north towards the exit.

2  Based on the male's significant injury, the fact that the injured male had been looking at

3  the white SUV as it left, and the SUV's quick departure after driving over the curb,

4  Sergeant Hamill believed that this vehicle had some connection to male as well as the

5  significant injury Sergeant Hamill observed.

6       57.  Sergeant Hamill followed the SUV out of the complex trying to identify its

7  license plate as well as its make and model. While he was following the SUV, it ran a red

8  light before taking the on-ramp to northbound Interstate 5.  Sergeant Hamill eventually

9  caught up to the SUV and identified it as a Hyundai Tucson bearing California license

10  #8PWL189.

11       58.  KCSO Master Police Officer (MPO) Bugosh arrived in the area and

12  Sergeant Hamill directed him to the Hyundai. MPO Bugosh began following the Hyundai

13  as it pulled into the gas station on the northeast corner of South 200 Street and

14  International Boulevard South, where MPO Bugosh conducted a traffic stop.

15       59.  MPO Bugosh contacted the driver and only occupant, who was later

16  identified as EVERETT JAMESLEE HAYES. The driver's door opened as MPO Bugosh

17  came to a stop behind the vehicle. HAYES immediately got out of the driver's seat, shut

18  the door, and faced MPO Bugosh. MPO Bugosh immediately noticed that HAYES's right

19  pants pocket was inside-out, which was indicative of someone quickly removing an item

20  from tight-fitting jeans. MPO Bugosh told HAYES to come to the front of the patrol car

21  and sit on the front bumper, where MPO Bugosh frisked him for weapons, finding none.

22       60.  HAYES asked why he was "being detained." MPO Bugosh explained that a

23  detective had watched an incident unfold at the Motel 6 and had seen him quickly leaving

24  the scene. HAYES said he did not have any identification on him, and verbally identified

25  himself to MPO Bugosh as EVERETT KENNEBREW. MPO Bugosh performed a record

26  check of HAYES and confirmed his identity with a matching driver's license photo.

27  HAYES's current Washington driver's license is in the name EVERETT JAMESLEE

28  HAYES, although he previously had a driver's license issued in the name EVERETT J

AFFIDAVIT OF SA NATHAN PETRULAK - 5
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  KENNEBREW.  HAYES's driver's license status was suspended, and he was required to

2  use an ignition interlock device when driving, which the Hyundai did not have.

3       61.    MPO Bugosh arrested HAYES for driving with a suspended license and

4  driving a vehicle without the required ignition interlock device. MPO Bugosh placed

5  HAYES into handcuffs without incident and read him his Miranda rights, which HAYES

6  said he understood. The Hyundai Tucson SUV was secured by KCSO Sergeant Barden

7  pending a search warrant.

8       62.    During a search incident to arrest, MPO Bugosh seized two .40 caliber

9  rounds of ammunition from HAYES's pants pocket. When MPO Bugosh removed the

10  bullets, HAYES asked "Is that illegal?" Assuming that HAYES knew that it was for him,

11  being a convicted felon, MPO Bugosh confirmed that it was illegal for him to possess

12  those items.  HAYES also had two cell phones, (1) one black cell phone, unknown make

13  (**SUBJECT DEVICE 1)** and (2) one blue OnePlus cell phone (**SUBJECT DEVICE 2**).

14  He also had $1,889.00 cash on his person. HAYES asked MPO Bugosh numerous times

15  why officers were impounding his girlfriend's car and asking what they were going to

16  look for.

17       63.    At approximately 3:25 p.m., MPO Bugosh spoke with an individual named

18  A.C., who said that she was renting the vehicle but had loaned it to HAYES to pick up

19  his girlfriend and pay for a room at the motel. MPO Bugosh explained to A.C. that her

20  vehicle was taken pending a search warrant and that HAYES was in SCORE jail.  A.C.

21  stated that the vehicle was "empty" when she loaned it to HAYES.

22  **C.**    **Search of Hyundai Tucson operated by HAYES**

23       64.    KCSO Detective Kelley obtained a search warrant for the white Hyundai

24  Tucson that HAYES had been driving.  When Detective Kelley searched the Hyundai, he

25  located a Taurus PT140Pro pistol in .40 caliber in the center console. The pistol had a

26  loaded magazine and a spent shell casing in the chamber.

27       65.    ATF Special Agent Brian Arnold is an interstate nexus expert who has

28  received specialized training in identifying firearms and their place of manufacture.  SA

AFFIDAVIT OF SA NATHAN PETRULAK - 6
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Arnold has examined photographs of the Taurus PT140Pro pistol in .40 caliber and the

2  two .40 caliber rounds of ammunition located in HAYES's pocket from HAYES's July

3  20, 2021 arrest and the Smith & Wesson SD40VE pistol in .40 caliber, and one round of

4  .40 caliber of ammunition located in the SD40VE pistol, and determined that both

5  firearms and the rounds of ammunition were manufactured outside the State of

6  Washington. Therefore, the firearm and rounds of ammunition must have traveled in

7  interstate or foreign commerce before being possessed in the state of Washington.

8  **D.    Search of Hotel Room #231**

9      66.    Later that day, Sergeant Hamill returned to the motel and joined several

10  detectives and deputies who were searching the area where Sergeant Hamill had last seen

11  the injured male.

12      67.    Detective Myklebust and Detective Ghrmai advised that blood had been

13  located on the lower level and a trail had been followed up to room #231. Due to the

14  amount of blood and the explanation of injury from Sergeant Hamill, Detective

15  Myklebust and Detective Ghrmai located room #231, found the door to the room ajar,

16  and entered the room to provide lifesaving efforts to anyone injured or unconscious

17  inside. No one was located inside the room. While inside room 231, detectives noticed

18  what appeared to be a bullet hole in the door of the room. Based on the damage,

19  detectives believe the bullet hole would have occurred from the inside of room 231. The

20  room was secured by Detective Myklebust and Detective Ghrmai pending a search

21  warrant. A request was put out to local hospitals for a possible victim who may have

22  sought aid.

23      68.    Detective Ghrmai contacted the neighboring unit to the south (232) and

24  spoke to the room's occupants, M.B. and S.B. M.B. informed Detective Ghrmai that

25  earlier that day, she had heard a fight next door and could hear multiple males and a

26  female arguing. M.B. stated that she had heard what sounded like someone getting

27  slammed into the wall. M.B. said she had been returning from a trip when she heard the

28  argument. S.B. advised Detective Ghrmai she was sleeping while M.B. was gone, but

AFFIDAVIT OF SA NATHAN PETRULAK - 7
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  awoke to what she thought was a gunshot. S.B. said she wasn't sure if it was a gunshot
2  because the sound is what woke her up.  S.B. further stated that she could hear an
3  argument next door but no other gunshots. S.B. said that she was scared and did not want
4  to open the door to find out what was going on. S.B. and M.B. informed Detective
5  Ghrmai they did not see anyone who was involved in the altercation; they could just hear
6  it.

7      69.     Deputy Bartolo and Deputy Brubaker reviewed video footage at the Motel
8  6 and observed a subject who matched HAYES's description (white t-shirt, black/white
9  pants, black hat, ponytail) exit room 231 shortly before Sergeant Hamill arrived at the
10  motel.  Further viewing of the video footage shows HAYES carrying under his shirt a
11  shiny item consistent with a firearm.

12      70.     After obtaining a search warrant, KCSO Detectives Kelly and Grotzky
13  searched room 231 taking photographs and recovered biological evidence.

14  **E.    HAYES's Involvement in Prostitution/Sex Trafficking**

15      71.     On August 4, 2021, KCSO Detective Alexander Grotzky listened to a voice
16  mail from HAYES in which he stated that he wanted his money and phone back, and that
17  he wanted to sue the King County Sheriff's Office as a result of his July 20, 2021 arrest.
18  HAYES requested a call back and provided a call-back number of 253-508-3082.
19  Detective Grotzky called this number, which went straight to voice mail, and left a
20  message for HAYES asking him to call him back.

21      72.     Detective Grotzky conducted a law enforcement database search of the
22  number 253-508-3082 and learned that it had been used to post online sex advertisements
23  in the Seattle area.  Specifically, Detective Grotzky located multiple different
24  advertisements that featured photographs of a woman, subsequently identified as T.M.,
25  over the past year.   These advertisements of T.M. were posted on multiple different
26  websites including privatedelights.ch, megapersonals.com, and onebackpage.com, all of
27  which are known "escort" sites that are commonly used to advertise individuals engaged
28  in prostitution.  One posting contained several photographs of T.M., including a nude

AFFIDAVIT OF SA NATHAN PETRULAK - 8
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

photograph with her breasts exposed.  Several advertisements included the same narrative, which Detective Grotzky is aware from training and experience is typical of the language used to advertise prostitution services and rates.  The narrative on several posts stated: "Hey gentlemen my name is Sheena Bonita.  I'm a curvy blasian & native american with 42DDD bust [insert of winking face emoji].  Your time with me is always unrushed and I aim to please and make sure you're comfortable and left satisfied.  I am TNA certified and have great reviews.  I am always clean and professional so I expect the same in return! Looking forward to hearing from you, lets have some fun! [insert kissing face emoji]  Ask about VIP menu!"  Additionally on this post was a price menu with the following prices: "QV 150 150 HH 200 HR 250 GFE +50 extra."  Detective Grotzky was aware through training and experience that these terms are commonly used in the commercial sex trade.  For example, "QV" is short for a "quick visit" or "quicky", "HH" references a half hour of time, "HR" is an hour visit that commonly involves sexual intercourse, and "GFE" is short for "girlfriend experience," which means that the prostitute will act as if they are the sex purchaser's actual girlfriend.  Based upon the language used and photographs included on these advertisements, Detective Grotzky concluded that they clearly advertised commercial sex.

73.    As noted above, the advertisements reviewed by Detective Grotzky contained photographs of a female with the stage name of "TasheenaBonita."  This female appeared to Detective Grotzky to be a female named T.M., who was listed as an associate of HAYES in another recent case (King County Sheriff's Office case number C21023693), in which HAYES is the suspect in a motor vehicle theft.  Detective Grotzky compared T.M.'s Washington State Department of Licensing photograph to the photographs on the online advertisements and confirmed that "TasheenaBonita" was T.M.

74.    As part of his involvement on the above-described motor vehicle theft case, Detective Grotzky learned that a woman named T.N. had accused HAYES of taking her vehicle, a red Dodge Challenger BKD7436, to transport another female to California.

1    Detective Grotzky sent a text message to the 253-508-3082 number associated with

2    HAYES in which he posed as a commercial sex customer interested in setting up a

3    "date."  A short time later, Detective Grotzky received a message from this number.   The

4    message, which purported to be from a woman, stated that she was currently in the

5    Hollywood area of Los Angeles.

6         75.    Detective Grotzky then checked law enforcement databases and learned

7    that an online "escort" advertisement for this number had been posted on the website

8    Privatedelights.ch on August 12, 2021.  The photographs and wording of the

9    advertisement indicated that it was an advertisement for prostitution.  The advertisement

10   had a photograph of T.M. and the text indicated that the advertisement had been posted in

11   Los Angeles, California.  Detective Grotzky checked for additional advertisements and

12   found additional postings for prostitution advertisements for "TasheenaBonita" between

13   August 12, 2021, and August 26, 2021, in the Los Angeles area.

14        76.    In an attempt to locate HAYES, law enforcement had obtained a court order

15   that provided the GPS location coordinates for the 253-508-3082 phone number.

16   Detective Grotzky checked the phone location "pings" from this phone number and found

17   that was currently located in the greater Los Angeles area.

18        77.    On August 27, 2021, the phone location "pings" showed the phone's

19   location in Portland, Oregon.  This same date, an online prostitution/escort advertisement

20   featuring a photograph of "TasheenaBonita" was posted in Portland.  Similar

21   advertisements featuring "TasheenaBonita" until August 31, 2021.

22        78.    After receiving information that HAYES had a Facebook account under the

23   name "Preneur Ponopoly," Detective Grotzky found a publicly available account with

24   that profile name. Upon reviewing the account, Detective Grotzky saw that the account

25   user name is listed to "Everett.Kennebrew" (a known alias of HAYES) and had multiple

26   photos of HAYES on its timeline. Looking through the Facebook postings, Detective

27   Grotzky observed multiple postings with HAYES tagging his location in the Los

28   Angeles, California area between August 14, 2021 through August 28, 2021, where he

AFFIDAVIT OF SA NATHAN PETRULAK - 10
USAO# 2021R01128

posted he was "Back in Seattle leaving town soon won't be here long tap in." It should be noted this post did not have a location tag with it.

79.     I am aware, based upon my training and experience and my consultations with other law enforcement officers who have experience investigating crimes involving sex trafficking or prostitution, that sex traffickers/pimps often take their victims to different locations throughout the United States to see new clientele in order to make more money.   I am aware that many sex traffickers/pimps will travel with their victims along the West Coast "circuit," which often includes travel to Portland, Las Vegas, and Los Angeles.   Each of these areas have known prostitution areas or "tracks."  My review of the information contained in the escort advertisements, phone location coordinates, and HAYES's Facebook posts are consistent with HAYES taking T.M. to Oregon and California for the purpose of prostitution.

**F.     HAYES's October 7, 2021 Arrest**

80.     On October 6, 2021, United States Magistrate Judge S. Kate Vaughan of the United States District Court for the Western District of Washington issued an arrest warrant for HAYES for violation of Title 18, United States Code, Section 922(g)(1) (Felon in Possession of Firearm and Ammunition).

81.     On October 7, 2021, at approximately 11:00 a.m., local and federal law enforcement officers held a briefing to prepare for the execution of HAYES's outstanding federal warrant.  After the briefing, law enforcement units established surveillance around HAYES's last known residence in Kent, Washington, but did not see signs of HAYES.

82.     Law enforcement then attempted to utilize a ruse by contacting HAYES and advising him that he could take possession of the cash that had been seized from his person by KCSO deputies on July 20, 2021 by retrieving it at SeaTac City Hall.   Law enforcement officers were advised that the money would not be released unless HAYES appeared in person.

AFFIDAVIT OF SA NATHAN PETRULAK - 11
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

83.     At approximately 1:35 p.m., a white female wearing a green jacket, later identified as M.E.K., arrived SeaTac City Hall and asked to take custody of the cash on behalf of HAYES. KCSO deputies contacted M.E.K. and turned her away. M.E.K. then left on foot and walked towards a 76 gas station across the street. Special Agent (SA) Salcepuedes observed M.E.K. going into the store and then exiting a few minutes later, after which she got into the driver's seat of a silver Honda Civic 4 door sedan that was parked on the southwest corner of the gas station lot.

84.     At approximately 1:52 p.m., the silver Honda Civic left the parking lot and traveled west to a Marathon gas station located at 2841 S. 188th Street in Seattle. Surveillance units followed the Honda Civic to the gas station, where they observed M.E.K. parked by a gas pump.  Shortly thereafter, HAYES, who had been walking in front of the gas station, got into the front passenger seat of the Honda Civic.  An arrest team moved in and initiated the arrest by activating their emergency lights. HAYES was taken out of the front passenger seat of the silver Honda Civic and arrested without incident. M.E.K. was taken out from the driver's seat of the silver Honda Civic and then detained.  While taking HAYES out of the vehicle, SA Salcepuedes observed in plain view suspected narcotics – namely, pills that had "M" and "30" imprinted on them in a clear plastic baggie hanging on the front passenger side door inside a black fabric container. SA Salcepuedes also observed a pistol with a silver slide underneath the front passenger seat.   Both the narcotics and firearm were in the immediate area of HAYES during the arrest.

85.     HAYES was searched incident to arrest. Among other things, law enforcement discovered a silver iPhone (**SUBJECT DEVICE 3**), which was taken into custody.

86.     SA Salcepuedes also recovered approximately 100 "M-30" pills weighing 15 grams, which based upon his training and experience, he knew are often laced with fentanyl.  I am aware, based upon my training and experience, that possession of 100 "M-30" pills are consistent with distribution quantities, as opposed to personal use. SA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Salcepuedes also recovered the pistol underneath the front passenger seat. The pistol was

2   a Smith & Wesson model SD40 VE, .40 caliber pistol with serial number FYT0363.

3   While rendering it safe, SA Salcepuedes noted that the firearm was loaded and had a

4   round in the chamber.  A subsequent law enforcement database check on the Smith &

5   Wesson pistol returned with no record.

6       87.    HAYES was transported and booked for his outstanding federal warrant at

7   the Federal Detention Center in SeaTac, Washington.

8       88.    The Smith & Wesson model SD40 VE, .40 caliber pistol with serial number

9   FYT0363 was subsequently sent to the King County Regional Identification Program

10   Automatic Fingerprint Identification System (AFIS) for latent fingerprint testing.  Latent

11   fingerprints were recorded from the Smith & Wesson pistol and were identified as

12   belonging to HAYES.

13   **G.    Interview of M.E.K.**

14       89.     On October 7, 2021, ATF SA Natalia Vorotnikova and Task Force Officer

15   (TFO) Todd Early had a recorded interview with M.E.K. following the arrest of HAYES.

16       90.    M.E.K. stated that HAYES is her daughter's cousin who she had not seen

17   for approximately two years until recently. M.E.K. advised on the day of the HAYES'

18   arrest she was operating a 2006 silver Honda Civic. M.E.K. stated the vehicle was

19   registered to her son, but she was the primary user. M.E.K. also added HAYES operated

20   the vehicle on the day of the arrest.

21       91.    M.E.K. stated on the day of the arrest HAYES called her and advised her

22   that he was coming over. M.E.K. provided the investigators with HAYES's cellphone

23   number (253-508-3082). M.E.K. stated during the phone call, HAYES asked her to pick

24   up his belongings that had been seized at his prior arrest, and that the items were at the

25   SeaTac Police Department.

26       92.    M.E.K. advised that after HAYES arrived at her residence, she drove with

27   HAYES to meet with M.E.K.'s daughter's father at the Econo Lodge.  M.E.K. further

28   stated after the meeting with daughter's father, she and HAYES drove to a hotel parking

AFFIDAVIT OF SA NATHAN PETRULAK - 13
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

lot across the street from the Marathon gas station where the arrest was conducted. (Note: the hotel across the street from Marathon gas station was Double Tree by Hilton, located at 18740 International Boulevard, Seattle, Washington.) M.E.K. told law enforcement that HAYES drove the Honda Civic from Econo Lodge to Double Tree by Hilton.

93.     After HAYES exited the vehicle, M.E.K. drove to SeaTac Police Department (PD). M.E.K. advised that she parked the vehicle at 76 gas station across the street from Seatac PD and walked across the street because her license was suspended.

94.     M.E.K. stated when she met with the police officers, she was advised they could not release the money to her. M.E.K. stated she then walked back to her car, contacted HAYES, and told him the police could not release money to her. M.E.K. stated that she drove to the Marathon gas station where she reconnected with HAYES.  M.E.K. said that HAYES told her that he wanted to go to the police station to pick up his money himself.

95.     M.E.K. stated that when the arrest was initiated, she was in the driver's seat and HAYES was in the passenger's seat.  She further stated that she had no knowledge of the firearm the investigators recovered from her vehicle.  M.E.K. added she was a convicted felon and could not possess a firearm.

96.     Prior to the interview being conducted, the investigators located a bag with M-30 pills in a plastic bag suspected to contain fentanyl, took a photo of it and showed it to M.E.K. When inquired about the bag with pills, M.E.K. advised she had never seen those pills before.

97.     M.E.K. reiterated she had not seen HAYES for years until recently and they communicated through Facebook.  She further reiterated that she was not aware of the firearm and pills were in her vehicle. M.E.K. advised she had been incarcerated for narcotics related conviction and was released approximately three years ago.

**H.    HAYES's October 8, 2021 Transport**

98.     On October 8, 2021, ATF SAs Salcepuedes and Arnold transported HAYES from the Federal Detention Center to the United States District Court in Seattle

AFFIDAVIT OF SA NATHAN PETRULAK - 14
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  for his initial appearance with a United States Magistrate Judge.  SA Salcepuedes audio
2  recorded the transport.  At the start of the transport,  SA Salcepuedes reminded HAYES
3  that he had previously been read his Miranda rights.

4        99.    Before the audio recording started, HAYES requested if he could make
5  phone calls to his child's mother to get his Mercedes out of a parking spot at an
6  apartment so it would not get towed.  Upon learning that she was in Portland, he asked
7  SA Salcepuedes to call M.E.K.   During this conversation, which was conducted on
8  speaker phone, HAYES told M.E.K. that she could pick up the keys to his Mercedes at
9  the ATF office.  HAYES also apologized to M.E.K. and told her "I'm gonna take
10  responsibility for my actions." HAYES apologized and told her he did not want her in
11  trouble and concluded the phone call.

12        100.    SA Salcepuedes asked HAYES if he was selling the pills that had been
13  recovered at his arrest on the front passenger side door, to which HAYES replied "no."
14  HAYES admitted to being a drug user and stated that he used pills and
15  methamphetamine.  When SA Salcepuedes asked if he could tell him where he got the
16  pills, HAYES replied "no" and stated that he had bought the pills from someone he knew
17  that he did not want to give up.

18        101.    HAYES then told agents of a different individual who he knew and got his
19  "shit" from. HAYES told agents that he believed that person was a "snitch" and a "rat"
20  (referring to a person who is an informant or provides information to law enforcement).
21  HAYES stated that after learning about this, HAYES decided to rob this individual.

22        102.    SA Salcepuedes asked HAYES if the reason why he is always armed is
23  because of being robbed in the past. HAYES stated he had been robbed, jumped, and
24  pistol whipped in the past. HAYES told agents he lost his right to bear arms and that he
25  was being punished for that.

26  ## DIGITAL DEVICES AS INSTRUMENTALITIES OF THE CRIMES

27  **A.**    **General Knowledge of Cellular Telephones/Smartphones**

28

AFFIDAVIT OF SA NATHAN PETRULAK - 15
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

103.    I know from training and experience that people own cellular telephones/smartphones for the purpose of being able to use them wherever they are, and as such carry them virtually constantly, or are nearly always within the near vicinity of their cellular telephones/smartphones. People often use cellular telephones/smartphones to communicate with their associates and will sometimes store associates's contact or identity information in contact lists, speed dial lists, or other areas of the phone. The communications can occur in many ways, including through typical cellular phone calls, instant messaging, text messages, SMS communications, chat sessions, email and social networking websites. I know that people use cellular telephones/smartphones to document and share information about their activities through phone calls, email, text messages, instant messages, SMS communications, photographs, videos, notes, and digital or voice memos that depict, discuss, or identify crime scenes, contraband, proceeds, victims, accomplices, or other evidence. Some of these communications are directed to another person or persons. Others are posted and shared more publicly, as happens with chat sessions and social networking websites.

104.    Cellular telephone/smartphone users can also use their phones for calendar items, web surfing, and obtaining directions to locations. A cellular telephone/smartphone typically stores, without action by the user, evidence of this use and activity of the phone in its memory and other onboard or external storage such as SIM card or Micro SD card, as well as information, such as call logs, address books, messages sent and received, images, audio and video files, personal calendars, documents, as well as IP addresses (unique numeric identifiers assigned when a device assesses the internet) and profiles for wireless networks to which they have been connected using wired or Wi-Fi connectivity, which include location as well as internet activity information (files viewed via the internet are typically automatically downloaded onto a computer). These evidentiary records, communications, and images can be retrieved from a cellular telephone, and will also often indicate the date, time, and physical location at which the activity occurred (cell site data and/or GPS coordinates for

AFFIDAVIT OF SA NATHAN PETRULAK - 16
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the phone). As such, a person's use of the cellular telephone/smartphone will reveal

2  where a person has been at particular dates and times relevant to the crimes under

3  investigation in this case, a person's activity at relevant dates and times, and/or places

4  where a person frequents at which that person is likely to be found for arrest or at which

5  the suspect stored or inadvertently left evidence behind.

6  **B.    General Knowledge of Activities involving Drugs and Firearms**

7  105.    I also know, based on my training and experience, that individuals engaged

8  in criminal activity will often use cellular telephones/smartphones to take photographs of

9  themselves with contraband, including drugs or firearms.  They will then send those

10  pictures via MMS, email, or other electronic means to their associates, and/or post said

11  pictures on social media such as Facebook, Snapchat, Instagram, and similar sites.  From

12  cellular telephones/smartphones and social media sites, I have frequently seen and

13  recovered photographs that depict suspects (including prohibited suspects) displaying

14  and/or brandishing contraband, including drugs and firearms.

15  106.    I am aware that drug traffickers use cellular telephones as a tool or

16  instrumentality in committing their criminal activity. They use them to maintain contact

17  with their suppliers, distributors, and customers. They prefer cellular telephones because,

18  first, they can be purchased without the location and personal information that land lines

19  require. Second, they can be easily carried to permit the user maximum flexibility in

20  meeting associates, avoiding police surveillance, and traveling to obtain or distribute

21  drugs and/or firearms. Third, they can be passed between members of a conspiracy to

22  allow substitution when one member is unavailable or  incapacitated.

23  107.    Since cellular phone use became widespread, all or nearly all drug dealers I

24  have contacted have used one or more cellular telephones for his or her drug business.  I

25  also know that it is common for drug traffickers to retain in their possession phones they

26  previously used, but have discontinued using, for their drug trafficking business.

27  108.    In addition, I also know, based on my training and experience, drug

28  traffickers, such HAYES, use firearms to protect their drug transactions. Accordingly,

AFFIDAVIT OF SA NATHAN PETRULAK - 17
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

drug traffickers, such as HAYES, will frequently acquire firearms from other individuals by trading for narcotics. Evidence of their negotiations for the illicit purchase and sale of firearms, in the form of text messages and/or other messaging applications, can and often are found on cell phones possessed by suspects. I have personally had the experience of searching, or causing others to search, cell phones seized during firearms cases and found communications evidencing the acquisition and possession of firearms by prohibited individuals.

## C.     General Knowledge of Activities of Sex Traffickers

109.    Through my investigative experience, and based upon training and conversations with other law enforcement officers involved in sex trafficking and prostitution investigations, I am aware that persons involved in criminal acts, including prostitution and sex trafficking, use cellular telephones/smartphones to communicate, conduct, store, manage, record, and depict information related to their illegal activity. Specifically, persons involved in sex trafficking/prostitution use cellular telephones/smartphones to keep in contact with females working for them as prostitutes, including while the females are engaged in a "date" with a client and the trafficker is waiting outside.

110.    I am also aware from my training and experience that sex traffickers/pimps will often take pictures of the females working for them.   Cellular telephones/smartphones are also capable of taking and storing photographs, and if Internet capable, can be used to post such photographs to escort websites in furtherance of criminal activity.  Sex traffickers/pimps also use cellular telephones/smartphones to arrange and negotiate commercial sex acts with potential customers who respond to the contact information listed on the online advertisement.  Such contacts consists of the time, location, details of a particular act of prostitution (date) as well as the frequency of such acts.

AFFIDAVIT OF SA NATHAN PETRULAK - 18
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

111.   I am also aware from my training and experience that sex traffickers/pimps will often transport their victims to different cities and states to work as prostitutes.  In such situations, sex traffickers/pimps will often use cellular telephones/smartphones to make travel arrangements, including plane tickets and hotel reservations.

112.   I am also aware from my training and experience that sex traffickers/pimps will often use the Internet to identify and recruit potential victims.  In my experience, traffickers/pimps will often utilize social media websites such as Facebook.com, Instagram.com, and Twitter.com to either identify individuals who might be vulnerable to their coercion and exploitation, or to brag about their sex trafficking/pimping exploits and the amount of money they are making.  I am also aware that some traffickers/pimps will use the Internet to access different dating/friendship websites (including Meetme.com and Carrot.com) to identify and recruit potential victims.   Most, if not all, traffickers/pimps I and other law enforcement officers who investigate these crimes have encountered have accessed the Internet through their cellular telephones/smartphones to engage in activities to further their sex trafficking crimes.

113.   I am aware that sex traffickers/pimps use cellular telephones as a tool or instrumentality in committing their criminal activity.  They use them to maintain contact with their victims and their customers.  They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require.  Second, they can be easily carried to permit the user maximum flexibility in arranging commercial sex act "dates" and communicating with their victims.  Since cellular phone use became widespread, every sex trafficker/pimp I have contacted has used one or more cellular telephones for his or her business.

**D.   Criminal Evidence Likely to be Found On Cellular Phones/Smartphones**

114.   Based on my training and experience, the data maintained in a cellular telephone/smartphone used by an individual involved in criminal activity related to firearms, drug trafficking, and sex trafficking/prostitution constitutes evidence of these crimes.  This includes the following:

AFFIDAVIT OF SA NATHAN PETRULAK - 19
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

115.    The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow law enforcement to obtain subscriber information, and uniquely identify the telephone.  This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

116.    The stored list of recent received, missed, and sent calls is important evidence.  It identifies telephones recently in contact with the telephone user.  This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts.  If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting.  Such information is also valuable in a sex trafficking/prostitution investigation because it will identify calls the trafficker/pimp made to facilitate the business, including by keeping in contact with his victims; recruiting new victims; arranging the details of prostitution "dates" with customers; or making travel arrangements for trips to transport a victim in another location.  Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user.  Identifying a defendant's law-abiding friends is often just as useful as identifying his criminal associates.

117.    Stored text messages are important evidence, similar to stored numbers.  Agents can identify both criminal associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

AFFIDAVIT OF SA NATHAN PETRULAK - 20
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

118. Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization or sex trafficking/prostitution organization. In my experience, many sex traffickers/pimps like to take photographs of their victims, to be posted on online prostitution advertisements. In addition, many sex traffickers/pimps like to take photographs of themselves in possession of large amounts of cash earned by their victims through commercial sex acts, or of themselves in locations where they have taken their victims to work as prostitutes. Also, digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located. In sex trafficking/prostitution cases, it can show where sex traffickers/pimps went, where they recruited their victims, and where they took victims to engage in commercial sex acts.

119. Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects. This data can also provide information about a sex trafficker/pimp's victims, customer base, co-conspirators, and individuals whom he is attempting to recruit.

120. Many cellular phones/smartphones may also be used to access and download information from the Internet and communicate with other devices via a variety of communication channels. These additional communication channels include traditional cellular networks, voice over internet protocol, video conferencing (such as FaceTime and Skype), and a wide variety of messaging applications (such as SnapChat What'sApp, Signal, Telegram, Viber and iMessage).

121. I know based on my training and experience that there are hundreds of different messaging applications available for popular cellular telephones and that the

capabilities of these applications vary widely for each application.  Some applications include end-to-end encryption that may prevent law enforcement from deciphering the communications without access to the device and the ability to "unlock" the device through discovery of the user's password or other authentication key.  Other communication applications transmit communications unencrypted over centralized servers maintained by the service provider and these communications may be obtained from the service provider using appropriate legal process.  Other applications facilitate multiple forms of communication including text, voice, and video conferencing.  I know based on my training and experience that obtaining a list of all the applications present on a handheld mobile computing device can provide valuable leads in an investigation.  By determining what applications are present on a device, an investigator may conduct follow-up investigation including obtaining subscriber records and logs to determine whether the device owner or operator has used each particular messaging application.  This information may be used to support additional search warrants or other legal process to capture those communications and discover valuable evidence.   With regards to a sex trafficking/prostitution investigation, this information can establish a sex trafficker/pimp's attempts to recruit individuals, keep tabs on his victims, or communicate with victims or co-conspirators.

122.    Cellular phones/smartphones may also contain internet browsing history. Most modern cellular devices have the ability to browse the internet. Therefore, browsing history may be stored on any wireless communication device seized during the search. Based on my training and experience, I know that internet browsing history may include valuable evidence regarding the identity of the user of the device.  This evidence may include online user names, account numbers, e-mail accounts and bank accounts as well as other online services.  Internet browsing history may also reveal important evidence about a person's location and search history.

AFFIDAVIT OF SA NATHAN PETRULAK - 22
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

123.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device used to access the Internet. This information can sometimes be recovered with forensic tools.

124.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICES because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

125.   *Manner of execution*. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## SEARCH AND/OR SEIZURE OF DIGITAL DEVICES

126.   Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit imaging or otherwise copying all data contained on the SUBJECT DEVICES, and will specifically authorize a review of the media or information consistent with the warrant.

127.   In accordance with the information in this affidavit, law enforcement personnel will execute the search of any computer or storage medium seized pursuant to this warrant as follows:

a.   *Securing the Data*. In order to examine the ESI in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of the Device.[1]  Law enforcement will only extract data physically present on or within the Device and doing so will not result in access to any data physically located  elsewhere. However, devices that have previously connected to device at other locations may contain data from those other locations.

b.   *Searching the Forensic Data*. Searching the forensic data for the items described in Attachment B may require a range of data analysis techniques.  In some cases, it is possible for agents and analysts to conduct carefully targeted searches

---

[1] The purpose of using specially trained computer forensic examiners is to ensure the integrity of the evidence and to follow proper, forensically sound, scientific procedures. When the investigative agent is a trained computer forensic examiner, it is not always necessary to separate these duties. Computer forensic examiners often work closely with investigative personnel to assist investigators in their search for digital evidence. Computer forensic examiners are needed because they generally have technological expertise that investigative agents do not possess. Computer forensic examiners, however, often lack the factual and investigative expertise that an investigative agent may possess on any given case. Therefore, it is often important that computer forensic examiners and investigative personnel work closely together.

that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant. The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit.

AFFIDAVIT OF SA NATHAN PETRULAK - 25
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **CONCLUSION**

128.     Based on the information set forth herein, there is probable cause to believe the property described in Attachment A contains evidence, instrumentalities, and/or fruits of the crimes of being a felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g); possessing firearms in furtherance of drug trafficking crimes, in violation of Title 18, United States Code, Section 924(c); distribution of, and possession with intent to distribute, controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); sex trafficking through force, fraud, and coercion, in violation of Title 18, United States Code, Section 1591(a)(1) and (b)(1); and transportation for the purpose of prostitution, in violation of Title 18, United States Code, Section 2421, as well as attempt or conspiracy to commit such offenses, as further described in Attachment B.

NATHAN PETRULAK
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

SUBSCRIBED and SWORN to before me this 18ᵗʰ day of November.

HONORABLE MICHELLE L. PETERSON
United States Magistrate Judge

AFFIDAVIT OF SA NATHAN PETRULAK - 26
USAO# 2021R01128

1

2

## ATTACHMENT A

3

### Property to be Searched

4

The SUBJECT DEVICES are described as follows:

5

6

a.        One black cell phone, unknown make (KCSO Item #C21022558-4)

7

(recovered from HAYES'S person on July 20, 2021) **(SUBJECT DEVICE 1)**, currently located in the custody of the King County Sheriff's Office (KCSO) 4623 7th Avenue

8

South, Seattle.

9

10



11

12

13

14

15

b.        One blue OnePlus cell phone (KCSO Item #C21022558-5)

16

(recovered from HAYES's person on July 20, 2021) **(SUBJECT DEVICE 2)**, currently located in the custody of the King County Sheriff's Office (KCSO), 4623 7th Avenue

17

South, Seattle.

18

19



20

21

22

23

24

c.        One silver iPhone (ATF Item #4) (recovered from HAYES's person

25

on October 7, 2021) **(SUBJECT DEVICE 3)**, currently located in the custody of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), 1521 1st Avenue South,

26

Seattle;

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5



6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ATTACHMENT A - 2
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**
**Items to be Seized**

From the **SUBJECT DEVICES** described in Attachment A of this warrant, the government is authorized to search for and seize the following items, which are evidence, fruits, and/or instrumentalities of violations of the crimes of being a felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g); possessing firearms in furtherance of drug trafficking crimes, in violation of Title 18, United States Code, Section 924(c); distribution of, and possession with intent to distribute, controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); sex trafficking through force, fraud, and coercion, in violation of Title 18, United States Code, Section 1591(a)(1) and (b)(1); and transportation for the purpose of prostitution, in violation of Title 18, United States Code, Section 2421, as well as attempt or conspiracy to commit such offenses:

a.   Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b.   Stored lists of recent received, sent, or missed calls;

c.   Stored contact information that may include names, telephone numbers, addresses, email addresses, or other contact information for criminal associates involved in drug trafficking or illegal firearms possession; or associates, customers, and/or sex workers involved in prostitution and sex trafficking;

d.   Stored photographs or videos related to controlled substances, currency, drug packaging material, firearms, or other evidence of drug trafficking, and/or that show the user of the phone or suspected co-conspirators, including any metadata such as embedded GPS data associated with those photographs;

e.   Stored photographs or videos related to prostitution/sex trafficking, or photographs or videos that may show the user of the phone and/or co-

ATTACHMENT B - 1
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conspirators, including any embedded GPS data associated with these photographs or videos, such as:

- Photographs posted on the internet for advertising escort services;

- Photographs of criminal associates and women working with or for EVERETT HAYES;

- Photographs of the potential proceeds of prostitution activity, including but not limited to large sums of cash, clothing, jewelry, electronics, and vehicles;

- Photographs of sites or locations where EVERETT HAYES and his associates or sex workers may have engaged in prostitution activities;

- Photographs of electronic devices that may show evidence of the user of those devices.

f.   Stored text or chat messages related to firearms or possession or distribution of controlled substances, or sex trafficking/prostitution, including Apple iMessages, Facebook Messenger messages or other similar messaging and chat services where the data is stored on the telephone.

g.   Evidence of user attribution showing who used or owned the digital device at the time of the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

h.   Evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

i.   Evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

j.    Evidence of the lack of such malicious software;

k.    Evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;

l.    Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the digital device or other electronic storage media;

m.    Evidence of the times the digital device or other electronic storage media was used;

n.    Passwords, encryption keys, and other access devices that may be necessary to access the digital device or other electronic storage media;

o.    Records of or information about the Internet Protocol used by the digital device or other electronic storage media;

p.    Records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses;

q.    Contextual information necessary to understand the evidence described in this attachment.

The search warrant authorizes imaging or otherwise copying all data contained on the subject devices. The search warrant also authorizes reasonable efforts to overcome any passcode protection of the subject devices.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form, including emails,

ATTACHMENT B - 3
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

photographs, text messages, information contained in applications or "apps," and calendar entries.

ATTACHMENT B - 4
USAO# 2021R01128

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970